AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT

for the

District of New Jersey

United States of America
v.
RENIERI DE JESUS LICONA AMADOR

*Defendant(s)*

Case No. 26-mj-7072 EAP

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of October 4, 2026 in the county of Camden in the District of New Jersey, the defendant(s) violated:

| *Code Section* | *Offense Description* |
|---|---|
| Title 18, United States Code, Sections 111(a)(1) and (b) | Assaulting, Resisting, or Impeding Certain Officers or Employees |

This criminal complaint is based on these facts:

See Attachments A and B

☑ Continued on the attached sheet.

/s/ Javed Narain

*Complainant's signature*

HSI Special Agent Javed Narain

*Printed name and title*

Sworn to before me and signed in my presence.

Date: 10/19/2026

*Judge's signature*

City and state: Camden NJ

Elizabeth A. Pascal

*Printed name and title*

Attachment A

On or about October 4, 2026, in Camden County, in the District of New Jersey, and elsewhere, defendant

RENIERI DE JESUS LICONA AMADOR

did forcibly assault, resist, oppose, impede, intimidate, and interfere with "Victim 1" and "Victim 2," both persons designated in 18 U.S.C. § 1114, namely Deportation and Removal Officers, employed by the United States Department of Homeland Security, Immigration and Customs Enforcement, while Victim 1 and 2 were engaged in and on account of the performance of Victims 1 and 2's official duties, where such acts involved the use of a dangerous weapon, namely a hammer.

In violation of Title 18, United States Code, Sections 111(a)(1) and (b).

**ATTACHMENT B**
**COMPLAINT AFFIDAVIT**

I, Javed Narain, Special Agent with the Department of Homeland Security (DHS), Immigrations and Customs Enforcement, Homeland Security Investigation ("HSI"), have knowledge of the following facts based on my own investigation and upon conversations with other individuals involved in this investigation. I have not included all of the facts known to me in this affidavit, just those facts which I believe necessary to establish probable cause. Where I assert that an event occurred on a particular date, I am asserting the event occurred on or about the date alleged. Where the contents of statements and conversations of others are set forth in this Affidavit, they are set forth in substance and in part, except where otherwise indicated:

Background

1. An alien is any person not a citizen or national of the United States. Immigration and Nationality Act (INA) § 101(a)(3), 8 U.S.C. § 1101(a)(3). This includes immigrants[1] and non-immigrants.

2. The United States Immigration and Customs Enforcement (ICE) is a federal law enforcement agency within the United States Department of Homeland Security. Its stated mission is to conduct criminal investigations, enforce immigration laws, preserve national security, and protect public safety.

3. ICE's two primary and distinct law enforcement components are: Homeland Security Investigations (HSI) and Enforcement and Removal Operations (ERO). HSI is primarily focused on the disruption of transnational crime, whereas ERO is responsible for the apprehension, detention, deportation and removal of

---

[1] Every alien seeking to enter the United States is presumed to be an immigrant, that is, intending to settle here permanently, unless he can prove that he or she is a non-immigrant. INA § 214(b), 8 U.S.C. § 1184(b).

undocumented immigrants and those who are illegally present in the United States.

4. Pursuant to 8 U.S.C. § 1357, all ICE Officers have the "power without warrant – (1) to interrogate any alien or person believed to be an alien as to his right to be or to remain in the United States." 8 U.S.C. § 1357(a)(1). If the immigration officer has a reasonable suspicion, based upon specific articulable facts that the person being questioned is, an alien illegally in the United States, the immigration officer may briefly detain the person for questioning. 8 C.F.R. § 287.8(b)(2). The statute further grants ICE officers the power and authority to arrest any alien in the United States "if [the officer] has reason to believe that the alien so arrested is in the United States in violation of any such law or regulation and is likely to escape before a warrant can be obtained for his arrest . . . ." 8 U.S.C. § 1357(a)(2).

## Investigation

5. Reinieri De Jesus Licona Amador ("LICONA AMADOR") is a native and citizen of Honduras.

6. On October 4, 2026, ERO Officers were conducting a targeted operation in Gibbsboro, New Jersey to identify and arrest illegal aliens. During the operation, ERO Officers conducted a license plate check of a Black Chevrolet truck bearing New Jersey plate M85 YKK. This check identified the registered owner of the vehicle as LICONA AMADOR. According to a search of immigration records, LICONA AMADOR lacked lawful status in the United States and was therefore

subject to removal.

7. ERO Officers followed the truck and observed that the driver of the vehicle bore a similar appearance to the photo found in LICONA AMADOR's immigration file. Accordingly, the officers concluded that the driver of the vehicle likely was LICONA AMADOR, an alien unlawfully present in the United States, as follows:



(ID photo of LICONA AMADOR as he appeared in an immigration database)

8. Once the truck reached a safer location, the ERO Officers activated their emergency lights to conduct a vehicle stop of LICONA AMADOR's truck. The truck pulled over to the side of the road and came to a complete stop on Clementon Road in East Gibbsboro, New Jersey. All Officers involved were wearing ICE-issued body armor clearly marked "POLICE," "ERO," and "ICE," as well as their badges displayed.

9. As ERO Officers approached LICONA AMADOR's truck to determine if LICONA AMADOR was violating immigration laws, they observed LICONA AMADOR sitting in the driver's seat. In addition, the Officers observed a Hispanic male sitting in the front passenger seat.[2]

10. When the Officers arrived at the truck, they saw LICONA AMADOR moving within the vehicle and reaching from the driver's seat into a tool container located in the back seat. The Officers saw LICONA AMADOR retrieve a hammer from this container, as follows:




(LICONA AMADOR observed via an Officer's-worn camera ("BWC"), grabbing hammer from back seat)

[2] The passenger was later determined to be a citizen and national of Honduras, who lacked lawful status in the United States and who previously had been issued a Final Order of Removal.

11. The Officers ordered LICONA AMADOR to stop moving, but he refused to comply with this order. Officers then opened the driver's side door of the truck and attempted to physically remove LICONA AMADOR from the vehicle. LICONA AMADOR pulled away and moved over to the passenger side of the truck, still holding the hammer. The Officers attempted to restrain and detain LICONA AMADOR, and they issued commands to LICONA AMADOR.

12. LICONA AMADOR did not comply with the Officers' commands. Instead, LICONA AMADOR climbed out of the passenger side of the truck, climbed on top of the passenger door, and began swinging his hammer at two ERO Officers, Victim 1 and Victim 2. LICONA AMADOR swung his hammer multiple times at Victim 1 and Victim 2. These events were captured on Officers' body-worn camera ("BWC") footage. Some of the still photos from BWC footage are as follows:



(LICONA AMADOR observed via an Officer's BWC footage, climbing out of the truck and holding his hammer)


(LICONA AMADOR swinging hammer at Victim 1 and Victim 2, as seen on BWC footage)

13. Officers deployed OC spray in an attempt to gain compliance from

LICONA AMADOR, and wrestled LICONA AMADOR to the ground, and arrested him. The Officers also notified Emergency Medical Services, in the event that LICONA AMADOR needed medical attention. EMS responded to the scene but LICONA AMADOR refused medical attention.

14. After LICONA AMADOR's arrest, I participated in an interview with Victim 1. During this interview, Victim 1 stated that on October 4, 2026, when LICONA AMADOR begin swinging a hammer at Victim 1, Victim 1 "saw [Victim 1's] life flash before [Victim 1's] eyes." Victim 1 also said that Victim 1 felt in fear of great bodily harm.

15. I also participated in an interview with Victim 2. During the interview, Victim 2 stated that on October 4, Victim 2 saw LICONA AMADOR standing above Victim 1 and Victim 2, and Victim 2 saw LICONA AMADOR swing the hammer toward Victim 1 and Victim 2. Victim 2 also stated that, had the hammer actually made physical contact with either Victim 1 or Victim 2, Victim 2 thought that the hammer would have caused serious, and potentially fatal, injuries to Victim 1 or Victim 2.

16. Following his arrest on October 4, LICONA AMADOR was fingerprinted and processed at the Elizabeth Detention Facility. During processing, biometric confirmation established that the individual who had been arrested was in fact LICONA AMADOR. Further, a records check of federal databases reflected that LICONA AMADOR lacked legal immigration status or, notwithstanding legal

immigration status, LICONA AMADOR was removable from the United States under U.S. immigration law.